**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MAKAYLA LYNN FLOYD,

Plaintiff,

v.

VYSTAR CREDIT UNION,

Defendant.

_____________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, MAKAYLA LYNN FLOYD ("Plaintiff" or "Ms. Floyd"), by and through undersigned counsel, sues Defendant, VYSTAR CREDIT UNION ("Defendant," "VyStar," or the "Company"), and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action against Defendant, her former employer, to recover damages for disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and for interference and retaliation in violation of the Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601 et seq.

2. As set forth below, Defendant unlawfully discriminated against Plaintiff, altered the terms, conditions, and privileges of her employment because of her disability, and retaliated against Plaintiff after she opposed discriminatory treatment. Defendant further interfered with Plaintiff's exercise of her rights under the FMLA and retaliated against her for exercising those rights.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered damages including loss of income, loss of opportunity for future income, loss of benefits, loss of future pay increases, increased out-of-pocket medical and prescription costs, loss of tuition assistance, and other pecuniary losses. Plaintiff was unable to afford prescribed medications after her termination and missed treatment for a period of time. Plaintiff also lost employer-provided tuition assistance mid-semester and was required to pay educational expenses out of pocket to avoid academic penalties. In addition, Plaintiff has suffered and continues to suffer emotional distress, mental anguish, embarrassment, humiliation, damage to reputation, and exacerbation of preexisting mental health conditions.

4. Plaintiff has incurred attorney's fees and costs in bringing this action.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The unlawful employment practices out of which Plaintiff's claims arise were committed within Duval County, Florida.

## PARTIES

8. Plaintiff is a resident of Duval County, Florida, and at all times material hereto was an employee within the meaning of the ADA and an eligible employee within the meaning of the FMLA.

9. At all times material herein, Plaintiff was an employee entitled to protection under the ADA and the FMLA.

10. Defendant, VYSTAR CREDIT UNION, is a credit union doing business in Florida, with principal places of business located at 76 S. Laura Street, Jacksonville, Florida 32202, and 100 W. Bay Street, Jacksonville, Florida 32202.

11. At all times material herein, Defendant regularly conducted business throughout Duval County, Florida, including at the location where Plaintiff was employed at 100 W. Bay Street, Jacksonville, Florida 32202.

12. At all times material herein, Defendant employed well in excess of the minimum number of employees required to qualify as an "employer" under the ADA and the FMLA.

13. Accordingly, Defendant is liable under the ADA for the unlawful discrimination and retaliation to which it subjected Plaintiff and under the FMLA for unlawfully interfering with Plaintiff's rights and retaliating against Plaintiff for exercising those rights.

## ADMINISTRATIVE PREREQUISITES

14. Plaintiff has satisfied all administrative prerequisites to filing this action.

15. On February 10, 2026, Plaintiff timely dual-filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, retaliation and disability discrimination.

16. On February 12, 2026, the EEOC issued Plaintiff a Notice of Right to Sue with respect to Charge No. 510-2025-09959.

17. All conditions precedent to bringing this action have been performed, have occurred, or have been waived.

## GENERAL ALLEGATIONS

18. On October 13, 2020, Plaintiff began working for Defendant as a Collector I at the 100 W. Bay Street location in Jacksonville, Florida.

19. In or around May 2022, Plaintiff was promoted to Collections Supervisor.

20. Plaintiff successfully performed her job duties for approximately four years without performance deficiencies or discipline. Her first verbal warning was not issued until December 2024.

21. Plaintiff did not report to Colleen Stubbs for the entirety of her employment. Colleen Stubbs became Plaintiff's direct manager following VyStar's merger with 121 Financial Credit Union in or around June 2024.

22. Beginning no later than June 2024, and continuing thereafter, Plaintiff was subjected to a hostile and increasingly oppressive work environment created and perpetuated by management, including Janet Hunnicutt and, later, Colleen Stubbs. Colleen Stubbs further intensified this hostile work environment after becoming Plaintiff's direct supervisor.

23. As a result of the severe workplace harassment and hostile work environment created by Defendant's managers and agents, Plaintiff developed a qualifying disability under the ADA, including severe panic attacks caused by workplace treatment. Defendant's conduct also exacerbated Plaintiff's preexisting mental health conditions, further impairing her functioning and requiring ongoing treatment.

24. In November 2024, Janet Hunnicutt yelled at Plaintiff in front of other employees in a humiliating and unprofessional manner, contributing to the hostile work environment.

25. In December 2024, Colleen Stubbs issued Plaintiff a verbal warning for alleged performance issues, despite Plaintiff's previously unblemished record and successful performance.

26. The December 2024 verbal warning was delayed and relied in part on events that had occurred months earlier, including actions that had previously been approved and had not been identified as problematic at the time.

27. Also in December 2024, Janet Hunnicutt made derogatory comments about Plaintiff to front-line employees, including calling Plaintiff an "idiot."

28. During this same period, employees warned Plaintiff that Janet Hunnicutt had threatened to monitor bathroom and break times, creating an atmosphere of surveillance and intimidation.

29. Employees also warned Plaintiff that if she approached Human Resources, she would "lose," reflecting a workplace culture that discouraged complaints and protected management.

30. Throughout this period, Defendant subjected Plaintiff to constant surveillance and monitoring, including requiring her to ask permission to leave her desk, including for bathroom breaks, timing her breaks, and monitoring her movements.

31. Defendant excessively micromanaged Plaintiff, held her to inconsistent standards compared to her peers, and intentionally created conflict between Plaintiff and her peers in an effort to isolate her within the workplace.

32. Plaintiff was not permitted to make decisions without first discussing them with Colleen Stubbs, who would then discuss Plaintiff's decisions with others and arbitrarily change them, undermining Plaintiff's authority and professional standing.

33. Colleen Stubbs placed an employee named Amanda on Plaintiff's team and later removed Amanda without consulting Plaintiff. That removal was subsequently used against Plaintiff in the December 2024 verbal warning, further demonstrating pretext and inconsistent treatment.

34. Defendant placed Plaintiff on a Performance Improvement Plan ("PIP") requiring 30-, 60-, and 90-day reviews.

35. The required 30-day PIP review was never conducted because Colleen Stubbs stated she did not yet have sufficient feedback and needed to observe additional meetings and one-on-ones, contrary to Defendant's own procedures.

36. On March 20, 2025, Defendant escalated Plaintiff from the December 2024 verbal warning to a "first and final" warning without meaningful intervening coaching, progressive discipline, or performance discussions.

37. Plaintiff exercised her right to appeal the "first and final" warning under Defendant's policies.

38. Plaintiff's appeal was not handled in accordance with Defendant's internal policy timelines and required repeated follow-up before a decision was made. Plaintiff was further advised that the appeal had been reviewed and denied by the same individuals—Janet Hunnicutt and Colleen Stubbs—who had issued the underlying discipline.

39. During the appeal process, Human Resources advised Plaintiff that retaliation would not be tolerated and that she should report it immediately if it occurred.

40. On or about April 21, 2025, an anonymous witness submitted a complaint through Defendant's HR Ethics Tipline regarding workplace conduct that had occurred in or around November 2024, and Plaintiff participated in the resulting investigation.

41. Plaintiff also engaged in protected activity by reporting ongoing harassment and discriminatory treatment through Defendant's Ethics Tipline and EthicsPoint systems.

42. On May 13, 2025, one of Plaintiff's direct reports expressed discomfort with Colleen Stubbs attending one-on-one meetings due to prior interactions and a belief that she was being targeted.

43. When Plaintiff sought guidance from Human Resources regarding this concern, she was told that neither she nor her team had any choice in the matter.

44. On May 13, 2025, Plaintiff submitted a formal complaint through Defendant's EthicsPoint system detailing the harassment, retaliation, and hostile work environment created by Colleen Stubbs and Janet Hunnicutt.

45. On May 15, 2025, Plaintiff met with Human Resources Business Partner Kristen Wendle regarding her complaint and was informed that her concerns had already been addressed despite the ongoing nature of the issues.

46. During that meeting, Plaintiff requested that a neutral witness be present during her weekly one-on-one meetings with Colleen Stubbs due to concerns about inaccurate documentation. That request was denied.

47. In May 2025, Plaintiff was openly criticized and humiliated during a team meeting in front of other supervisors regarding disciplinary documentation, despite those documents having been reviewed, edited, and approved by management and Human Resources, and used as templates for other supervisors.

48. On May 23, 2025, Colleen Stubbs and Kristen Wendle reprimanded Plaintiff for expressing frustrations to a peer and instructed her that she could only communicate such concerns to management.

49. Due to the severe and ongoing harassment, discrimination, and hostile work environment, Plaintiff's mental health deteriorated significantly, resulting in severe panic attacks requiring medical attention and treatment, as well as worsening of her preexisting mental health conditions.

50. On May 19, 2025, Plaintiff was approved for intermittent FMLA leave due to her serious health condition and disability.

51. Plaintiff's FMLA leave was approved from May 19, 2025, through May 18, 2026, at a frequency of up to two episodes per week.

52. Plaintiff was qualified and eligible for FMLA leave, and Defendant employed more than 50 employees within 75 miles of Plaintiff's worksite.

53. On June 1, 2025, Plaintiff used her first approved FMLA leave.

54. Defendant's managers made derogatory comments about FMLA leave and mental-health-related conditions, including that such leave was "ridiculous and lazy" and that "mental health is stupid," demonstrating discriminatory animus.

55. On June 10, 2025, just nine days after Plaintiff's first use of FMLA leave and shortly after her protected complaints, Defendant terminated Plaintiff's employment during what was supposed to be a 60-day PIP review meeting.

56. The termination meeting lasted approximately two minutes.

57. Defendant claimed Plaintiff violated her "first and final" warning by delivering an attendance-related disciplinary action without Colleen Stubbs present, even though Plaintiff had been explicitly instructed and authorized to do so.

58. Defendant's stated reason for termination was false and pretextual.

59. The timing of Plaintiff's termination demonstrates a causal connection between her protected activity and Defendant's decision to terminate her employment.

60. As a result of her termination, Plaintiff lost income, health-related benefits, and tuition assistance.

61. Plaintiff was unable to afford prescribed medications and missed one to two months of treatment due to increased out-of-pocket costs.

62. Plaintiff also lost tuition assistance mid-semester and was required to pay her educational expenses out of pocket to avoid being dropped from classes.

63. On or about July 22, 2025, during Plaintiff's first week with a new employer, an anonymous caller contacted her new employer, described Plaintiff as an "unethical hire," and attempted to interfere with her employment.

64. Defendant and/or its agents continued to monitor Plaintiff's professional activities following her termination, including her LinkedIn activity.

65. Plaintiff has also observed that emails relevant to the events at issue have disappeared, raising concerns regarding destruction, tampering, or withholding of evidence.

66. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages including lost wages, lost benefits, out-of-pocket medical and educational expenses, emotional distress, mental anguish, humiliation, reputational harm, and ongoing treatment-related expenses.

**COUNT I**
Violation of the Americans with Disabilities Act
Disability Discrimination
42 U.S.C. § 12112

67. Plaintiff realleges and incorporates paragraphs 1 through 66 as though fully set forth herein.

68. At all times material, Plaintiff was an employee of Defendant within the meaning of the ADA.

69. At all times material, Defendant was an employer within the meaning of the ADA.

70. Plaintiff suffered from a disability within the meaning of the ADA, including severe panic attacks that substantially limited one or more major life activities, including working, concentrating, sleeping, and interacting with others.

71. Plaintiff was otherwise qualified to perform the essential functions of her position, with or without reasonable accommodation.

72. Defendant knew of Plaintiff's disability and/or knew facts sufficient to place Defendant on notice of Plaintiff's disabling condition and related need for protection under the ADA.

73. Defendant, through its managers and supervisors, subjected Plaintiff to discriminatory treatment because of her disability, including heightened scrutiny, excessive monitoring, micromanagement, isolation, inconsistent standards, derogatory remarks concerning mental health, and materially adverse changes to the terms and conditions of employment.

74. Defendant further subjected Plaintiff to materially adverse terms and conditions of employment by requiring Plaintiff to seek permission to leave her desk, including for bathroom breaks, timing her breaks, undermining her authority, criticizing her publicly, denying her requests for protection during one-on-one meetings, and escalating discipline in a pretextual and inconsistent manner.

75. Rather than correct the discriminatory conduct, Defendant escalated its mistreatment of Plaintiff and terminated her employment on June 10, 2025.

76. Defendant discriminated against Plaintiff because of her disability in violation of the ADA.

77. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered damages including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, out-of-pocket medical and educational expenses, and other pecuniary and nonpecuniary losses.

WHEREFORE, Plaintiff demands judgment against Defendant and requests all relief available under the ADA, including back pay, front pay or reinstatement, compensatory damages, pre- and post-judgment interest, attorney's fees, costs, and such other relief as the Court deems just and proper.

**COUNT II**
Violation of the Americans with Disabilities Act
Retaliation
42 U.S.C. § 12203

78. Plaintiff realleges and incorporates paragraphs 1 through 66 as though fully set forth herein.

79. Plaintiff engaged in protected activity under the ADA by opposing disability discrimination and harassment, including through her complaints to the Ethics Tipline and EthicsPoint and her opposition to discriminatory and retaliatory conduct by management.

80. Defendant knew of Plaintiff's protected activity.

81. After Plaintiff engaged in protected activity, Defendant increased its scrutiny and adverse treatment of Plaintiff and ultimately terminated her employment on June 10, 2025.

82. The close temporal proximity between Plaintiff's protected activity and her termination, together with the facts alleged above, support a causal connection between Plaintiff's protected activity and the adverse actions taken against her.

83. Defendant's stated reason for terminating Plaintiff was false and pretextual, including because the conduct Defendant claimed violated Plaintiff's final warning had been expressly authorized by Colleen Stubbs.

84. Defendant retaliated against Plaintiff because she opposed disability discrimination and harassment, in violation of the ADA.

85. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, out-of-pocket medical and educational expenses, and other pecuniary and nonpecuniary losses.

WHEREFORE, Plaintiff demands judgment against Defendant and requests all relief available under the ADA, including back pay, front pay or reinstatement, compensatory damages, pre- and post-judgment interest, attorney's fees, costs, and such other relief as the Court deems just and proper.

**COUNT III**
Violation of the Family and Medical Leave Act
Interference
29 U.S.C. § 2615(a)(1)

86. Plaintiff realleges and incorporates paragraphs 1 through 66 as though fully set forth herein.

87. At all times material, Plaintiff was an eligible employee within the meaning of the FMLA.

88. At all times material, Defendant was an employer within the meaning of the FMLA.

89. Plaintiff suffered from a serious health condition within the meaning of the FMLA.

90. Plaintiff was approved for intermittent FMLA leave from May 19, 2025, through May 18, 2026, for up to two episodes per week due to her serious health condition.

91. On June 1, 2025, Plaintiff used approved FMLA leave.

92. Defendant knew Plaintiff had been approved for and had exercised rights under the FMLA.

93. Defendant interfered with, restrained, and denied Plaintiff's exercise of rights under the FMLA by, among other things, discouraging the use of FMLA leave, expressing hostility toward mental-health-related leave, and terminating Plaintiff's employment shortly after she first used approved intermittent leave.

94. As a result of Defendant's termination of Plaintiff's employment, Plaintiff was denied the benefit of the remainder of her approved FMLA leave period.

95. After Plaintiff's termination, her approved FMLA leave was closed because she was no longer an active employee, and she lost the opportunity to use the balance of her approved leave.

96. Defendant thereby interfered with Plaintiff's exercise of rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

97. As a direct and proximate result of Defendant's unlawful interference, Plaintiff has suffered damages including lost wages, salary, employment benefits, and other compensation and is entitled to all damages and equitable relief authorized by the FMLA.

98. Defendant's violation was not in good faith, and Plaintiff is therefore entitled to liquidated damages to the full extent permitted by law.

WHEREFORE, Plaintiff demands judgment against Defendant and requests all relief available under the FMLA, including lost wages, lost salary, lost employment benefits, liquidated damages, equitable relief including reinstatement or front pay where appropriate, pre- and post-judgment interest, attorney's fees, costs, and such other relief as the Court deems just and proper.

**COUNT IV**
Violation of the Family and Medical Leave Act
Retaliation
29 U.S.C. § 2615(a)(2)

99. Plaintiff realleges and incorporates paragraphs 1 through 66 as though fully set forth herein.

100. Plaintiff engaged in activity protected by the FMLA by requesting, obtaining approval for, and using FMLA leave.

101. Defendant knew Plaintiff had requested, been approved for, and used FMLA leave.

102. On June 10, 2025, Defendant terminated Plaintiff's employment.

103. The temporal proximity between Plaintiff's first use of approved FMLA leave on June 1, 2025, and her termination on June 10, 2025, supports a causal connection between Plaintiff's protected activity and Defendant's adverse action.

104. Additional facts supporting retaliatory intent include Defendant's hostile remarks about FMLA leave and mental-health-related leave, together with the pretextual nature of the reason given for Plaintiff's termination.

105. Defendant retaliated against Plaintiff because she exercised rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

106. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages including lost wages, salary, employment benefits, and other compensation and is entitled to all damages and equitable relief authorized by the FMLA.

107. Defendant's violation was not in good faith, and Plaintiff is therefore entitled to liquidated damages to the full extent permitted by law.

WHEREFORE, Plaintiff demands judgment against Defendant and requests all relief available under the FMLA, including lost wages, lost salary, lost employment benefits, liquidated damages, equitable relief including reinstatement or front pay where appropriate, pre- and post-judgment interest, attorney's fees, costs, and such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Dated: April 21, 2026.

Respectfully submitted,

*/s/ Jason W. Imler*

Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
Imler Law
23110 State Road 54, Unit 407
Lutz, Florida 33549
Telephone: (813) 553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com